[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On April 23, 1997, the plaintiff, Bank of Boston Connecticut, initiated an ex parte motion for prejudgment remedy, temporary restraining order and preliminary injunction to secure the sum of $500,000 by attaching the real property at 102 Holmes Road, Ridgefield, Connecticut, which property is now owned by the codefendant, Angela Schlichting, claiming a fraudulent transfer and, further, to garnishee Chase Bank as agent, transfer debtor of defendant Angela Schlichting. The bank's officer, Judith L. Germano, testified that the exact payoff now due from the defendant, Walter E. Schlichting, was $451,381.39; broken down to $377,564.80 as principal balance, and interest of $68,528.05. Defendants' counsel, Attorney Bottinick, stipulated to the debt CT Page 7144 and the fact that it was outstanding and past due. In addition, the costs of collection were estimated at approximately $20,000. Ms. Germano further testified that the loan was in default as of July, 1995. On cross-examination, she testified that the loan was current in 1993 and 1994, and up through July of 1995. She stated that the acceleration notice was sent after the last payment in July, probably in September, 1995. Defense counsel indicated in his questioning that the acceleration took place in November, 1995. The defendant, Walter Schlichting, testified he and his wife purchased their share of Carolyn Rose, Inc. in 1987, and he personally guaranteed the bank's note. Plaintiff's exhibit twelve. He testified that although James T. Sprague was a co-owner of Carolyn Rose, Inc. (hereinafter called Rose), he and his wife managed the property and paid the bills, including the mortgage. He confirmed that the last payment on the note was in July of 1995. The exhibits offered by the plaintiff included exhibit one, fifty shares of stock in Rose in the name of Walter and Angela Schlichting. Plaintiff's exhibit two, the 1992 United States tax return for Rose, shows zero income and a net loss of $23,596. Plaintiff's exhibits three and four were tax returns for this corporation for 1993 and 1994, and in each of those years, Rose had zero income. In 1993, Rose had a net loss of $22,844 and in 1994, a net loss of $26,891. Plaintiff offered tax returns for the defendants (exhibit five) for 1990, showing their adjusted gross income of $81,108, and for 1993, (exhibit six), an adjusted gross income of $172,876. For the tax year 1994, their adjusted gross income was $30,490 (exhibit seven). Plaintiff's exhibit eight, a warranty deed dated August 9, 1979, conveying title jointly to the defendants of property at 102 Holmes Road. Plaintiff's exhibits nine and ten consisted of the quitclaim deed from Walter Schlichting to his wife, Angela Schlichting, dated October 22, 1993, and the state conveyance tax form showing "no consideration." He also testified that the transfer to his wife of the 102 Holmes Road property was part of an estate plan recommended by Attorney O'Grady. Plaintiff's exhibit eleven consisted of an eight page estate planning form prepared by the defendant, Walter Schlichting, for Attorney Kevin O'Grady of Westport dated January 25, 1994. On that form, Walter Schlichting listed assets of $185,700 and his wife, Angela, assets of $346,200, and together they held jointly $91,500. In plaintiff's exhibit thirteen, the plaintiff submitted an analysis of their mutual assets with Walter Schlichting having assets of $270,750 and his wife, Angela Schlichting, having assets of $666,550 as of January, 1994. The same document showed his liabilities as $527,000 and her liabilities as $142,000. Exhibits fourteen CT Page 7145 through nineteen showed joint assets of both defendants; The Bond Fund of America, Washington Mutual Investors Fund, and The Income Fund of America for the periods January 9, 1994 through December 29, 1995. The defendant, Walter Schlichting, testified that Rose owns the property on West Main Street, Waterbury, Connecticut and has no other assets. He retired from IBM after twenty-five years service in September, 1993, at which time he started a consulting business. Finally, he testified the shares of the funds which they owned were sold about four weeks prior to the prejudgment remedy hearing, and the moneys were transferred to a Swiss bank account. He stated that this transfer was done because the DOW had dropped seven hundred points and it was a good time to sell the fund shares.
In First Constitution Bank v. Masotta, Superior Court, judicial district of New Haven at New Haven, Docket No. 336859 (September 28, 1992, Vertefeuille, J.), involved a case where the debtors conveyed their home to their daughters on November 29, 1991. On September 10, 1991, the defendants had signed a promissory note payable to the plaintiff which was due and payable in full on December 9, 1991. In First Constitution, the defendants disputed the threshold issue of whether the plaintiff is a creditor who can challenge the conveyance of the home made on November 29, 1991. The court, in granting the prejudgment remedy application, stated: "`Section 5(a) of the Act states that a transfer is fraudulent as to a creditor if the creditor's claim arose before the transfer was made. . . ." (Internal quotation marks omitted.) Id. In First Constitution, the defendants argued that because the note in question did not mature until December 9, 1991, the plaintiff did not become a creditor of the defendants until December 9, several days after the transfer of the home. In the instant case, the defendants also argue that since the transfer to the wife took place in 1993, and the defendant, Walter Schlichting, did not default on the guarantee and note payments until 1995, the defendant debtor was not insolvent at the time of the real estate transfer and he was simply complying with advice of counsel.
The defendants point out that after the transfer of real estate, the defendant, Walter Schlichting's financial position was solid, especially relying on the fact that payments on the note were made for two years after the transfer. The court, accordingly, finds the defendant, Walter Schlichting, was able to pay his debts on October 22, 1993. Insolvency is a badge of fraud as spelled out in the Act. Insolvency is only one of several CT Page 7146 factors that the court must consider when viewing a claim of intentional fraudulent transfer. Based on the criteria set forth in Molitor v. Molitor, 184 Conn. 530, 536, which stated: "[a] conveyance is fraudulent if made with actual intent to avoid any debt or duty or if made without any substantial consideration by a person who is or will be thereby rendered insolvent. . . . A person is insolvent for these purposes when he is unable to pay his then-existing debts." (Citations omitted.) This court finds that the defendants here had an income in the year 1993 of $172,876 and that the note to the plaintiff's bank was paid for nearly two years after the claimed fraudulent transfer. This court finds that he was able to make regular payments on this debt and his ability to make future payments at the time of the transfer was not impaired. Accordingly, a fraudulent transfer is a question of fact, and fraudulent intent must be proved by clear, precise and unequivocal evidence. Tyers v. Coma,214 Conn. 8, 11. "This standard of proof applies to intra-familial conveyances." Id. The plaintiff's proof has not risen to the level of clear, precise and unequivocal evidence. Accordingly, the plaintiff's application to set aside the transfer of the real property at 102 Holmes Road, Ridgefield is denied.
With respect to the mutual funds, the court at the hearing ordered the defendants to make no further transfer pending a decision of this court. The court intends to find the transfer of these funds was fraudulent since the transfer to a Swiss bank had the effect to hinder, delay or defraud the creditor bank. The court makes no decision at this time and orders the parties to appear for a further hearing limited to the issue of whether the funds in the Swiss bank account(s) can be attached and/or ordered returned to this state. The temporary restraining order remains in effect.
Grogins, J.